**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **MAG. NO. 25-2026** |
| **DANTE SHACKLEFORD** | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Robert E. Eckert, Assistant United States Attorney for the District, respectfully moves this Honorable Court to detain the defendant. As charged in the complaint, the defendant committed one successful gunpoint robbery of a Brinks armored truck, and attempted two others. On the day of his arrest, law enforcement stopped the defendant from committing another robbery. Thus, the defendant presents as a clear danger to the community. In addition, when law enforcement attempted to detain him prior to the commission of the robbery on the date of his arrest, he fled from police in a vehicle. He then parked the stolen car that was to be used to commit the robbery in a residential area, and fled the area along with his co-defendant through a nearby residence. While there he changed his clothing and continued to attempt to evade law enforcement. The defendant's initial efforts to escape were successful and he was able to break through a law enforcement perimeter until he was detained and later arrested by FBI agents in West Philadelphia. When officers searched the vehicle in which the defendant was first observed, a stolen Honda, they recovered an AR-style pistol that is consistent with the firearm used to commit each armored truck robbery noted above.

The defendant's actions in each of these crimes, standing alone, shows how he is a danger to the public, when considered in combination with each other, it is clear that he must be detained as a matter of public safety. Here, the defendant also demonstrated that he would take the opportunity to flee given his efforts, initially successful, to evade capture by federal law enforcement. Thus, the defendant is also a clear flight risk and he should be detained on that basis as well.

The defendant is now charged federally via a criminal complaint with one count of Hobbs Act robbery and two counts of attempted Hobbs Act robbery, both in violation of 18 U.S.C. § 1951(a), and one count of carrying, using, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). If convicted, he faces a mandatory minimum term of seven years' imprisonment, and a statutory maximum of up to life imprisonment. Indeed, the defendant's crimes are so serious that Congress saw fit to attach presumptions that the defendant is a danger to the community and a risk of flight and that no condition or combination of conditions will protect the community and ensure the defendant's presence in court. *See* 18 U.S.C. § 3142(e).

The Government respectfully submits that, for the reasons detailed below, the defendant will not be able to rebut these presumptions and therefore, he should be detained prior to trial following a hearing held pursuant to 18 U.S.C. § 3142(f).

## I. FACTS

Beginning on June 26, 2025 through August 12, 2025, a series of robberies and attempted robberies occurred involving armored trucks in Philadelphia and Montgomery Couties. Through investigation, the Federal Bureau of Investigation (FBI) determined that the

same individuals appeared to have committed each of the robberies. During the dates noted above, offenders attempted to rob a Brinks truck at an H Mart in Elkins Park, Pennsylvania, on July 22, 2025. On August 12, 2025, the same offenders robbed a Brinks truck at the same location and stole over $100,000.

After identifying the defendant, Dante Shackleford, as a suspect, agents obtained documents from Fulton Bank indicating that the defendant had an account with that bank and that he opened it and provided phone number 835-213-8295. Investigators determined though service of process to cell phone providers that the defendant's phone, including timing advance data, was at every charged robbery. The defendant's phone location further matches up with the time the offenders' vehicle remained on location for both a Planned Parenthood robbery as well as both of the H Mart offenses.

As a part of the investigation into these offenses, FBI agents obtained court-authorized cell phone location data for the phone believed to be used by Shackleford. On October 2, 2025, investigators were reviewing the location data for Shackleford and noted that his phone was located in the area of the H Mart where Shackleford and others both attempted and robbed a Brinks truck during this investigation. They further determined through cell phone location data, city surveillance cameras, and their familiarity with the modus operandi of the offenders that the defendant was likely either driving or the passenger in a stolen white Honda Accord with tinted windows and a paper tag.[1]

Law enforcement personnel spotted the stolen white Honda Accord in a PNC Bank parking lot located at 4060 City Avenue in Philadelphia. There is a Target adjacent to the bank

[1] For each robbery, the defendants used a stolen car.

and when officers first observed the stolen Honda Accord they noticed a Brinks truck parked at the Target. When officers attempted to stop the Honda for a vehicle investigation, it fled at a high rate of speed through the parking lot and attempted to escape.

Investigators pursued this vehicle at a high-rate of speed through Philadelphia into Montgomery County. After a pursuit, the vehicle was able to evade officers in Lower Merion Township. Because the defendant's phone continually provided location data consistent with travel into Montgomery County, investigators believed that he was the person in the Honda fleeing from police. Investigators located the stolen Honda parked in Bala Cynwyd, Pennsylvania.[2]

Investigators subsequently recovered video evidence of two individuals walking through the neighborhood in the vicinity of the Honda, moving through backyards and changing their clothes as they walked. Agents observed that the stolen, abandoned, Honda Accord had an AR-style pistol in the back seat. Further investigation revealed that this firearm was consistent with the firearm used to commit multiple robberies that occurred in this case. Furthermore, the defendant's phone was not located in the vehicle.

FBI personnel identified a white Dodge Charger as a vehicle of interest in the investigation based on the registered owner of the vehicle and recovered surveillance video that depicted the defendant getting into this white Dodge Charger on the morning of October 2, 2025. Thus, knowing that the Honda had been abandoned during the events noted above, FBI and PPD personnel began looking for the white Dodge Charger. Investigators located the vehicle and followed it for a few blocks in West Philadelphia. After the vehicle parked, FBI

[2] The recovered Honda Accord had been stolen on September 25, 2025, in Philadelphia.

agents, with the assistance of PPD, were able to detain the defendant without incident. Investigators called the defendant's number and a phone in plain view in the Charger rang.

After the defendant was detained, investigators continued their search for the other individual in Montgomery County. They located another individual hiding in a basement window well and took him into custody without incident. A subsequent canvass of the area recovered, from a backyard in close proximity to where the Honda was recovered, a Glock firearm, the key fob to the stolen Honda, and clothing.

Based on the evidence set forth above, the evidence against the defendant is strong and the likelihood of his conviction is great for both the offenses charged in the complaint and the additional attempted robbery described above.

On October 2, 2025, a Magistrate Judge sitting in the Eastern District of Pennsylvania approved a criminal complaint charging the defendant with two counts of attempted Hobbs Act robbery and one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and one count of carrying, using and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Accordingly, there is probable cause to believe that the defendant committed the offenses described above.

## II. DEFENDANT'S INFORMATION

The defendant is 26 years old. At the time of his arrest in this case, the defendant appears to have been living in South Philadelphia with his girlfriend.

Based on the applicable mandatory sentence, and his demonstrated ability and desire to flee from police, the defendant is unlikely to follow the directives of this Court or appear for proceedings as required.

## III. MAXIMUM PENALTIES

The maximum penalty for a violation of Title 18, United States Code, Section 1951(a), Hobbs Act robbery and attempted Hobbs Act robbery (Counts One through Three), is a term of 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment. The mandatory minimum penalty for Title 18, United States Code, Section 924(c), carrying, using, and brandishing a firearm during and in relation to a crime of violence (Counts Three and Five), where the firearm is brandished, is seven years of imprisonment consecutive to any other sentence imposed and also carries a maximum penalty of life imprisonment, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment. Therefore, the defendant faces a mandatory sentence of seven years of imprisonment that must run consecutive to any other sentence imposed and a total maximum sentence of life imprisonment.

## IV. THE LAW

Title 18 U.S.C. § 3142(g) sets forth the factors that this court is to consider in determining whether a person should be released or detained. In summary, these factors are:

1) the nature and circumstances of the offenses charged;
2) the weight of the evidence against the defendant;
3) the history and characteristics of the defendant including-
   a) employment history, financial resources, drug abuse, criminal history and record of appearance at court proceedings, and
   b) whether he was on supervision at the time of his offenses or arrests or was on release pending court proceedings;
4) the dangerousness to any person or the community.

The Bail Reform Act also provides that with respect to certain specified crimes, rebuttable presumptions arise that the defendant is a risk of flight and that no condition or

combination of conditions will reasonably assure the safety of any other person and the community. Title 18, United States Code, Section 3142(e)[3]. Section 3142(e)(3) states:

> Subject to rebuttal...it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed:
>
> (B) an offense under section 924(c) . . . of this title

18 U.S.C. § 3142(e)(3)(B). In other words, the presumptions of flight and community danger arise where there is probable cause to believe that the defendant has committed a violation of Title 18, United States Code, Section 924(c)(1)(A). As noted above, that offense is charged here and thus the statutory presumptions are triggered in this case upon the filing of the charges at Counts Three and Five (18 U.S.C. § 924(c)(1)(A)).

Where the presumptions arise, a defendant must rebut the presumptions by presenting some credible evidence that he will not flee and does not pose a threat to the community. United States v. Suppa, 799 F2d 115, 120 (3d Cir. 1986). It is firmly established that evidence pertaining solely to "character and lifestyle" or community ties is insufficient to meet this burden. United States v. Delker, 757 F.2d 1390, 1396 (3d Cir. 1985) (legislative history of the

[3] The pretrial detention statute was a response to "the alarming problem of crimes committed by persons on release." United States v. Salerno, 481 U.S. 739, 742 (1987). "The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f). Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest. [citation omitted] Nor is the act by any means a scattershot attempt to incapacitate those who are merely suspected of these serious crimes. ... While the Government's general interest in preventing crime is compelling, even this interest is heightened when the government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest." Id. at 750.

Bail Reform Act shows that "presence of [a tie to the community]...has no correlation with the question of safety of the community."). See also, United States v. Strong, 775 F.2d 504, 508 (3d Cir. 1985).[4]

## V. CONCLUSION

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

The government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

David Metcalf
United States Attorney

/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

Dated: October 8, 2025

[4] The law is clear that even if rebutted, the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with the other factors set forth in 18 U.S.C. Section 3142(g). See United States v. Dominquez, 783 F.2d 702 (7th Cir. 1986).

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **MAGISTRATE NO. 25-2026** |
| **DANTE SHACKLEFORD** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this day of October, 2025, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention under Title 18, United States Code, Section 3142(e)(1) because:

a. the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

b. the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1. There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 1951(a) (Counts One through Three), and Section 924(c) (Count Four).

2. The evidence in this case is strong, and the likelihood of conviction is great.

a. Law enforcement investigation, firmly establishes on July 15, 2025, in Philadelphia, and July 22, 2025, in Elkins Park, Pennsylvania, the defendant, in concert with others, attempted to rob Brinks trucks, and on August 12, 2025, in Philadelphia, Pennsylvania, all in the Eastern District of Pennsylvania, on both occasions, in concert with others, the defendant, in concert with others, successfully robbed a Brinks truck of over $100,000. Each of the robberies and attempted robberies noted above had a measurable impact on interstate commerce.

3. The total maximum penalty the defendant faces is: a mandatory sentence of seven years of imprisonment that must run consecutive to any other sentence imposed, a total maximum sentence of life imprisonment, a five-year period of supervised release, and a total maximum fine of $1,000,000.

4. The strength and nature of the case against the defendant, and the substantial sentence the defendant faces if convicted establish that the defendant is a danger to the community and increase the high risk that the defendant will not appear as required by the Court.

5. As there is probable cause to believe that the defendant committed an offense under Title 18, United States Code, Section 924(c), the Court must presume - subject to rebuttal by the defendant - that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. The defendant has failed to rebut these presumptions.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

________________________________

HON. CRAIG M. STRAW
*United States Magistrate Judge*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Government's Motion for Pretrial Detention, and Proposed Order, was served via electronic mail upon Elizabeth Toplin, Esq., counsel for Mr. Shackleford.

/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

Dated: October 8, 2025